**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**MARK T. LASKER** **PLAINTIFF**

**v.** **Case No. 4:25-cv-00590-KGB**

**COMMISIONER,**
**SOCIAL SECURITY ADMINISTRATION** **DEFENDANT**

**ORDER**

Before the Court is United States Magistrate Judge Joe J. Volpe's Proposed Findings and Recommended Disposition ("Recommendation") (Dkt. No. 11). Plaintiff Mark T. Lasker filed objections to the Recommendation (Dkt. No. 12). After conducting a *de novo* review of the record, including the Recommendation and objections, the Court adopts the Recommendation in its entirety with the modifications set forth in this Order as this Court's findings in all respects.

## I. Background

On February 2, 2022, Lasker applied for disability insurance benefits under Title II of the Social Security Act ("Social Security Act") (Dkt. No. 5-5, at 5–33). Lasker alleged that he became unable to work because of his disabling condition on January 4, 2022 (*Id.*, at 5). On May 21, 2024, an administrative law judge ("ALJ") issued a decision finding that Lasker was not disabled under the Social Security Act from the alleged onset date,[1] through June 30, 2022, the date last insured (5-2, at 11–29). Lasker appealed the ALJ's decision, and the appeal was denied (*Id.*, at 2–5). Therefore, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration ("Commissioner") (*Id.*). Lasker then filed this action pursuant to 42

[1] The ALJ's decision states that Lasker was not under a disability "at any time from January 5, 2022" through "June 30, 2022" (Dkt. No. 5-2, at 23). The Court understands this to be a scrivener's error, given that the ALJ elsewhere described the alleged onset date of Lasker's disability as January 4, 2022 (*Id.*, at 14).

U.S.C. § 405(g) (Dkt. No. 2).

**II. Objection**

On November 29, 2022, Dr. Rita Allbright wrote a report which stated that Lasker had postural limitations and that Lasker should never climb ladders, ropes, or scaffolds and that Lasker should only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl (Dkt. No. 5-3, at 45–46). Dr. Allbright also stated that Lasker has exertional limitations of occasionally "lifting and/or carrying" up to 20 pounds and frequently "lifting and/or carrying" up to 10 pounds (*Id.*). Dr. Allbright's report further states that the push and pull limitation of the upper extremities is "unlimited, other than lift and/or carry" and that the push and pull limitations of the lower extremities is "limited beyond lift and/or carry" (*Id.* at 45). Under the report's statement which says, "[e]xplain exertional limitations and how and why the evidence supports your conclusions," Dr. Allbright wrote "occasional BLE pushing/pulling" (*Id.*). On July 26, 2023, Dr. Janet Cathey wrote a report with the same findings as those in Dr. Allbright's report (*Id.*, at 55–56).

On May 21, 2024, the ALJ issued the decision regarding Lasker, finding that Lasker had the residual functional capacity "to perform light work as defined in 20 CFR 404.1567(b) except [that] he could never climb ladders, ropes, or scaffolds," "could occasionally stoop, crouch, kneel, and crawl," and must "avoid concentrated exposure to excessive vibration, unprotected heights, and hazardous machinery" (Dkt. No. 5-2, at 18). The ALJ did not find that Lasker had a pushing or pulling limitation (*Id.*).

In reaching his conclusion, the ALJ found Dr. Allbright and Dr. Cathey's "opinions generally persuasive, as they were supported by the record available at the time they were formed" (Dkt. No. 5-2 at 21).

Lasker argues that the ALJ erred in determining Lasker's residual functional capacity and

impairments by failing to explain why he did not include Dr. Allbright and Dr. Cathey's limitation for "occasional pushing and/or pulling with the bilateral lower extremities" into his decision and that such a failure was a violation of Social Security Ruling 96-8P ("SSR 96-8P") which is a reversible legal error (Dkt. No. 12, at 1).

SSR 96-8P states in pertinent part that "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Policy Interpretation Ruling Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P, 1996 WL 374184, at 7 (S.S.A. July 2, 1996) (hereinafter "*Social Security Ruling 96-8P*").

In the Commissioner's brief, the Commissioner argued—and the Recommendation agreed (Dkt. No. 11, at 5–7)—that the ALJ did explain why he did not include Dr. Allbright and Dr. Cathey's pushing and pulling limitation by referencing the improvement in Lasker's lower extremity pain, normal gait, strength, and range of motion (Dkt. No. 9, at 11).

Lasker argues that the ALJ's discussion of Lasker's improvement in lower extremity pain, normal gait, strength, and range of motion was not used by the ALJ to explain why Dr. Allbright and Dr. Cathey's limitation was not adopted but rather was utilized by the ALJ as support for finding Dr. Allbright and Dr. Cathey's medical opinions as persuasive to support the ALJ's residual functional capacity decision (Dkt. No. 12, at 2). Lasker further argues that the Recommendation failed to assess "whether the ALJ made any legal errors" (*Id*., at 3).

**III. Legal Framework**

A person's disabled status under the Social Security Act is considered using a five-step sequential analysis: (1) if the individual is doing substantial gainful activity, he will not be found to be disabled; (2) if the individual does not have either a severe medically determinable physical

or mental impairment that meets a duration requirement or a combination of severe impairments meeting a duration requirement, he will not be found to be disabled; (3) if the individual's severe impairment meets or equals a listed impairment, he will be found to be disabled; (4) if the individual can still do his past relevant work, he will not be found to be disabled; and (5) if, based on the individual's residual functional capacity, age, education, and work experience, the individual can make an adjustment to other work, he will not be found to be disabled. 20 C.F.R. § 404.4520(a)–(g); 20 C.F.R. § 416.920(a)–(g). If a claimant's impairment does not meet or equal a listed impairment at step three, the ALJ must determine a claimant's residual functional capacity which will be used in step four and five. 20 C.F.R. § 404.1520(e); *see also Social Security Ruling 96-8P*.

In reviewing an ALJ's decision, the Court examines "whether it is supported by substantial evidence on the record as a whole and whether the ALJ made any legal errors." *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016). The factual findings by the Commissioner are conclusive, so long as they are supported by substantial evidence. 42 U.S.C. § 405(g); *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). Substantial evidence in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is enough that "a reasonable mind would find it adequate to support the [Commissioner's] decision." *Id.* (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). In assessing whether substantial evidence exists, the Court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). The Court cannot reverse the Commissioner's decision merely because substantial evidence may also support an opposite conclusion. *Slusser*, 557 F.3d, at 925.

"The failure to comply with SSA regulations is more than a drafting issue, it is legal error."

*Lucus v. Saul*, 960 F.3d 1066, 1070 (8th Cir. 2020); *see also Brueggemann v. Barnhart,* 348 F.3d 689, 694 (8th Cir. 2003) (contrasting a "mere drafting oversight" with the "failure to follow . . . [t]he Commissioner['s] duly promulgated regulations"); *Walker v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 550, 554 (8th Cir. 2018) (Social Security Administration regulations give special weight to treating physicians and the failure to give good reasons for rejecting treating physician's opinion was "reversible error").

**IV. Analysis**

The Court finds Lasker's objection unpersuasive. The Court agrees with Lasker that SSR 96-8P requires the ALJ to explain why the opinion of a medical source was not adopted and that an ALJ's failure to follow the Social Security Administration's regulations is legal error. *Lucus*, 960 F.3d at 1070. Here, however, the ALJ did explain his reasons for not adopting Dr. Allbright and Dr. Cathey's lower extremity pushing and pulling limitation.

The ALJ stated that—in forming his decision to find that Lasker could perform light work with certain limitations—he had considered: (1) "the entire record" (Dkt. No. 5-2, at 24–29); (2) "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" (*Id.*, at 18); and (3) specifically, the opinions of Dr. Allbright and Dr. Cathey (*Id.*, at 21). In assessing the value of Dr. Allbright and Dr. Cathey's opinion, the ALJ found the doctors' opinions to be "generally persuasive, as they were supported by the record available at the time" (*Id.*). To support the ALJ's conclusion that Dr. Allbright and Dr. Cathey's opinions were supported by the record available at the time, the ALJ explained that other medical evidence supported Dr. Allbright and Dr. Cathey's conclusions, including that Lasker's "neuropathy appeared amenable to proper medical management as there was 'significant improvement in his lower extremity pain'" and that the "examination notes

throughout his date last insured" were consistent with the doctors' opinions (*Id.*, at 20, 21).

After this explanation, the ALJ stated that Lasker's "range of motion, gait, and *strength* supported a finding that he retains the ability to perform the exertional requirement of light work." (*Id.*, at 21) (emphasis added). Earlier in the ALJ's explanation, the ALJ considered Lasker's testimony that Lasker was "unable to lift more than ten pounds" (*Id.*, at 19), but the ALJ found that the statements "concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record" (*Id.*). The ALJ went on to explain that Lasker "retained 5/5 strength throughout his L2-S1 myotomes, bilaterally," had "no increased pain with facet loading maneuvers, bilaterally," had generally negative results in straight leg testing, was "able to walk on his heels, walk on his toes, and walk in tandem," and had no evidence that Lasker "used a cane or other assistive device to ambulate" (*Id.*, at 20).

The ALJ also noted that Lasker's neuropathy appeared amenable to proper medical treatment since the record shows that Laker had "significant improvement" in the pain of his lower extremities following a spinal cord stimulator treatment (*Id.*). Finally, the ALJ discussed the fact that Lasker "retained the ability to perform chores, shop, pay meals (sic), and prepare simple meals," "performed yard work, including using a push lawnmower," "walked up to two miles a day," and "cared for two grandchildren" (*Id.*, at 21). The ALJ then concluded that such activities of daily living were not limited "to the extent one would expect" given Lasker's alleged limitations (*Id.*).

Although the ALJ did not explicitly state that the ALJ was not adopting the exertional limitation to Lasker's lower extremities found in Dr. Allbright and Dr. Cathey's report, the Court disagrees that the ALJ failed to explain why the limitation was excluded. *See Social Security*

*Ruling 96-8P*. Here, the ALJ acknowledged Lasker's subjective complaint of exertional limitations (Dkt. No. 5-2, at 22) and Dr. Allbright and Dr. Cathey's reports (*Id.* at 21). However, the ALJ found that Lasker's statements "concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence" and that no exertional limitation was appropriate after discussing and citing Lasker's lower extremity strength, 5/5 strength in his L2-S1 myotomes, ability to push a lawnmower, and significant improvements in lower extremity pain with treatment, among other factors (*Id.* at 19).

Accordingly, the Court finds that the ALJ sufficiently explained why the ALJ did not find that Lasker had a pulling or pushing exertional limitation in his lower extremities and did not violate SSR 96-8P by failing to explain why the opinion of Dr. Allbright and Dr. Cathey was not adopted. *Social Security Ruling 96-8P*; *see also Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003) (finding that—although the ALJ was silent on the limitation—an ALJ implicitly found no limitation to sitting, standing, and walking when the ALJ "did not simply describe the RFC 'in general terms'" and "did not simply overlook the possibility that [plaintiff] was limited with respect to sitting, standing, or walking" because the ALJ considered plaintiff's testimony, asked a question about the limitation to a vocational expert, and made explicit findings as to other limitations). Thus, no legal error was committed, and the Court declines to reverse on this ground. *Lucus*, 960 F.3d at 1070.

Further, the Court agrees with the Recommendation that the ALJ's decision was supported by substantial evidence (Dkt. No. 11). Accordingly, upon a *de novo* view of the entire record, the Court adopts the Recommendation in its entirety with the modification that the Recommendation includes a typographical error. The Recommendation states that Lasker "had not engaged in substantial gainful activity since June 30, 2022," but it should state "January 4, 2022." (Dkt. No.

11, at 2). For these reasons, the Court adopts the Recommendation in its entirety with the modifications set forth in this Order as this Court's findings in all respects.

## V. Conclusion

For the foregoing reasons, the Court:

(1) adopts the Recommendation in its entirety with the modifications set forth in this Order (Dkt. No. 11);

(2) affirms the final decision of the Commissioner; and

(3) dismisses with prejudice Lasker's complaint (Dkt. No. 2).

It is so ordered this 22nd day of September, 2026.

Kristine G. Baker
Kristine G. Baker
Chief United States District Judge